898 F.2d 155
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Arthur K. WINN, Plaintiff-Appellee Cross-Appellant,
Linda G. Winn, Plaintiff-Appellee,
v.
AMERICAN STEAMSHIP COMPANY, Defendant-Appellant Cross-Appellee.
 No. 89-1368.
 United States Court of Appeals, Sixth Circuit.
 March 23, 1990.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a maritime personal injury action arising out of Arthur Winn's slip and fall aboard the M/V Belle River on the western waters of Lake Superior. The American Steamship Company appeals the jury verdict in favor of Winn and his wife, Linda Winn. We affirm.
 
 
 2
 Winn joined the Merchant Marine in 1980. Winn was a relief seaman in that he did not hold a permanent job; rather, he was hired out of the Seafarers International Union hall on an as-needed basis. He was an "entry level" ordinary seaman and had acquired experience as a deck hand, porter, and on various engine room jobs.
 
 
 3
 Winn boarded the Belle River in the fall of 1986 as a deck hand. It was the deck hand's responsibility to maintain and clean the deck, tie up the ship when docking, and in connection with the loading process, unclamp hatch covers and assist the hatch crane in the removal of the covers. By mid-November, 1986, Winn's duties also included moving the hot water sprinklers, which were used to deice the bow hatches on the Belle River.
 
 
 4
 On December 15, 1986, at approximately 1:00 A.M., the captain ordered that the sprinklers be moved and that order was passed down to Winn from the watchman. Though the sprinklers deiced the hatch covers, they did not deice the deck between the hatches where Winn had to walk. Consequently, when Winn arrived at the hatch cover where the sprinklers were, he was standing on an inch of ice. In addition, the deck lights that were being used provided very little illumination. Spray was coming over the bow of the boat and was hitting Winn. While attempting to move the sprinkler, Winn fell on the ice and injured his knee.
 
 
 5
 Winn suffered multiple tears of the cartilage in his knee. He is permanently restricted from returning to work as a seaman; nor can he return to his previous job as a mason. He applied for numerous other jobs, but was unable to find work.
 
 
 6
 Subsequently, Winn filed suit against American Steamship Company. Damages were claimed for negligence under the Jones Act, 46 U.S.C. Sec. 688, and for unseaworthiness under general maritime law. A derivative claim for loss of consortium was also made on behalf of Linda Winn. The jury returned a verdict in favor of Winn on both the negligence and unseaworthiness theories. The jury awarded him damages of $450,000, but then applied a 20% comparative negligence reduction, resulting in a $360,000 judgment. The jury also returned a verdict in favor of Linda Winn on her loss of consortium claim and awarded her $15,000; the district court refused to apply the comparative negligence reduction to this award.
 
 
 7
 On appeal, American Steamship initially argues that the district court abused its discretion in allowing the testimony of Billy Waddell, Captain Joseph Fox and Captain Michael Gerasimos as expert witnesses. American Steamship contends that these witnesses lacked the foundational background and experience necessary to render expert opinions on the issues involved. We disagree.
 
 
 8
 Rule 702 of the Federal Rules of Evidence states:
 
 
 9
 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 10
 Both Fox and Gerasimos had been long-time captains who handled ships on the Great Lakes. Fox was a retired Coast Guard captain who served aboard a Coast Guard cutter on the Great Lakes. Gerasimos was a former Ford Motor Company master. Clearly both of these captains were qualified to testify as expert witnesses in this case.
 
 
 11
 Waddell had been a ship's electrician for 23 years, served on the Belle River for 10 years, and was responsible for all the lighting on the Belle River. Waddell's testimony concerned proper lighting and when deicing procedures should be performed. Though we believe he could have properly testified as to these issues as an expert under Rule 702, even if he could not have, he certainly could have testified under Rule 701 as a lay witness. Rule 701 points out that if the witness is not testifying as an expert, his testimony, in the form of opinions or inferences, is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. At the very least, Waddell comes within this standard.
 
 
 12
 American Steamship also argues that the jury's verdict was against the great weight of the evidence and thus the district court should have set aside the verdict and ordered a new trial. We again disagree. We find that the record contains sufficient evidence to support the verdict. The district court's denial of a new trial was therefore correct.
 
 
 13
 American Steamship contends that the district court erred in its denial of remittitur. A motion for remittitur should only be granted where the jury's assessment of damages clearly "exceeds the amount which, under the evidence in the case, was the maximum that the jury reasonably could find to be compensatory" for the plaintiff's loss. In re Lewis, 845 F.2d 624, 635 (6th Cir.1988). The evidence showed that Winn was permanently disabled from returning to work as a seaman, a job that paid him $25,000 per year, and that he could not find another job. We therefore do not find the jury's award to be clearly excessive, and hold that the district court properly rejected American Steamship's motion for remittitur.
 
 
 14
 Finally, American Steamship argues that the district court erred in refusing to reduce Linda Winn's loss of consortium award by the 20% comparative negligence finding of the jury. We believe that it was within the district court's discretion to refuse to reduce Linda Winn's award. In any event, any error made by the district court on this issue is de minimis.
 
 
 15
 Accordingly, we affirm the judgment of the district court.